**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**SOUTHERN DIVISION**

|                          |          |                          |
|--------------------------|----------|--------------------------|
|                          | *        |                          |
| STEVIE BURTON            | *        | Civil Case No. AW-11-314 |
|                          | *        | Crim Case No. AW-04-0559 |
| v.                       | *        |                          |
|                          | *        |                          |
|                          | ******   |                          |
| UNITED STATES OF AMERICA |          |                          |

## MEMORANDUM OPINION

Before the Court is a Motion/Petition to Vacate filed by the Petitioner/Defendant, Stevie Burton for relief pursuant to 18 U.S.C. § 2255.  On December 5, 2005, Petitioner pled guilty to conspiracy to distribute cocaine and cocaine base (Count I), and possession of a firearm in furtherance of a drug trafficking crime (count II).  On June 12, 2006, Petitioner filed a motion to withdraw his guilty plea which was denied by this Court on January 7, 2007 following a hearing thereon.   Petitioner was sentenced on February 26, 2007 (Judgment entered on 2-28-07) to a term of 292 months as to count I and a consecutive term of 60 months on count II.  Petitioner timely noted his appeal, and on November 6, 2009 the judgment and conviction was affirmed in an unreported decision by the United States Court of Appeals for the Fourth Judicial Circuit. The mandate was issued by the Fourth Circuit on November 30, 2009.  Petitioner did not file a petition for *writ of certiorari* to the United States Supreme Court.  On June 18, 2010, Petitioner filed a "Supplemental Motion for Retroactive Application of sentencing Guidelines to Crack Cocaine Offense pursuant to 18 U.S.C. 3582 (c)(2).   On November 9, 2010, the Court granted the Supplemental Motion and issued an order reducing the previously imposed (2-28-07) sentence of 292 as to Count I to 235 months.  The sentence as to Count II remained the same.

The present § 2255 Motion was filed on February 4, 2011, (by Petitioner's wife, Mia who seeks "next friend status"), and the filing was duplicated 5 days later on February 9, 2011 when Petitioner himself filed the Motion. The Motion is based upon three claims of ineffective assistance of counsel all surrounding Petitioner's motion to withdraw his guilty plea. The Government initially did not respond to the merits of the claims itself-- electing to respond to the Motion by moving to dismiss Petitioner's § 2255 Motion as time barred. The Court determined that the Motion was timely filed and, accordingly, denied the Government's motion to dismiss in a Memorandum Opinion and Order issued on July 12, 2011. (see papers # 605-1 and 606-1)

Petitioner presents three claims of ineffective assistance of counsel each grounded upon Petitioner's motion to withdraw his guilty plea. First, Petitioner asserts that his counsel rendered ineffective assistance of counsel by filing a motion to withdraw his pleas of guilty which Petitioner argues exposed him to a far greater sentence. Next, Petitioner claims that his counsel provided ineffective assistance of counsel by calling Petitioner as a witness during the hearing on the motion to withdraw under circumstances whereby counsel knew or should have known that Petitioner's testimony would trigger or result in a significant increase in Petitioner's sentencing guideline range. Finally, Petitioner contends that his counsel rendered ineffective assistance by filing and litigating the motion to withdraw before counsel had reviewed the Pre-Sentence Report or sentencing guideline range with Petitioner.

With respect to the claims by Petitioner that his counsel was ineffective, the Court reviews his allegations under the well established standard set forth in *Strickland v. Washington,* 466 U.S. 668, 687 (1984), under which a claimant must establish the two prong standard of deficient performance and prejudice. In other words, in order to succeed on his claim of ineffective assistance of counsel, Petitioner must show that his counsel's performance was deficient in that counsel made errors so serious that he ceased to function as a counsel within

the meaning of the Sixth Amendment, and that the alleged deficient performance prejudiced the defense. Id.

First, the Petitioner must show that counsel's representation "fell below an objective standard or reasonableness", as measured by prevailing professional norms. Id at 688. Courts should be deferential in this inquiry, and have "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id at 689. The Petitioner must, therefore, overcome the presumption that the representation "might be considered sound trial strategy." Second, Petitioner must demonstrate that counsel's inadequate performance prejudiced him. Id at 687. Here, Petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id at 694. A reasonable probability, in turn, is defined as "a probability sufficient to undermine confidence in the outcome." With these legal principles in mind, the Court now turns to Petitioner's arguments.

Preliminarily, the Court observes that beyond listing the three claims of ineffective assistance in the Motion, Petitioner presents no specifics in support of these claims. Petitioner attaches to his Motion, an October 24, 2007 two page cover letter (together with an enclosure dated October 22, 2007) from a law firm (signed presumably by one of the principles of the firm) indicating that the firm had met with Petitioner's wife (while the appeal was pending before the Fourth Circuit) and had outlined to her the firm's thoughts on any potential claims with reference to the filing of a § 2255 motion. The letter urged Petitioner [should the appeal be denied] to retain the firm at $15,000 (less ($2500 already paid). The enclosure was a 29 page memorandum which outlined the firm's review of the proceedings in *United States v. Stevie Burton* (AW-04-0559) and the firm's thoughts, opinions and conclusions with respect to potential claims. The Court does not believe it is obligated or is it necessary to respond to a law firm's thoughts,

conclusions or recommendations submitted solely to a potential client and not formerly filed with the court on behalf of the movant/Petitioner herein. The Court remembers this case quite well.  But for a series of extremely poor judgments and his lack of candor with respect to the status of his property and his secret intent to breach the forfeiture clause in the agreement, Petitioner most likely would have received a substantially lesser sentence than what was ultimately imposed.

The Court will provide some background information to give context to the Court's ultimate conclusion to deny Petitioner's Motion. Petitioner initially negotiated a plea offer in September of 2005 with the Government which included the forfeiture of a home on Webster Lane, in Fort Washington, Maryland which Petitioner owned.  As part of the plea negotiations, Petitioner also agreed to cooperate and testify in any upcoming trials involving co-defendants where his testimony would be relevant.   Prior to the consummation of the plea agreement, the Government learned that Petitioner had sold the Webster Lane property and pursuant to a power of attorney conferred by Petitioner upon his wife (Mia Burton), Petitioner had arranged for his wife to attend settlement and to receive a $391,547.50 check from the title company which she deposited into a bank account in the name of Petitioner.  Upon learning of the sale, the Government [which had not known of the sale and of Petitioner's inability to comply with the forfeiture clause in the negotiated plea agreement] then secured a court order in September of 2005 to seize the net currency from the sale of the Webster Lane property as "proceeds" from the criminal activity described in the indictment.  The seizure of these funds and the Government's requirement for forfeiture of these funds as set forth in the plea agreement which was executed on December 5, 2005 were significant in connection with what followed and what, the Court believes, is at the heart of these claims of ineffective assistance of counsel.

The Government is absolutely on target with their reasoning as set forth in its Response

to the Motion. The Court agrees with their arguments and adopts them in their entirety. Eventually, Petitioner and the Government reached a plea agreement and Petitioner signed the agreement and entered his plea on 12-5-05. The Government has acknowledged that the executed plea agreement differed from the original plea offer of September 2005 in a couple of ways that are relevant for this discussion. First, the Government would be asking for a sentence at the high end rather than within the guideline range as previously indicated, and second, inasmuch as the Webster Lane property has been sold, there was a provision prohibing Petitioner and his family members from challenging the forfeiture or from attempting to obtain the proceeds from the sale of the Webster Lane home. It was also contemplated that Petitioner would cooperate and could possibly get a reduction [departure/variance] from a base offense level of 36 and a criminal history category of II (210-262 months) which was the stipulated guideline range before any departures. A five year mandatory-minimum sentence was applicable as to Count II and was required to be tacked onto whatever the final sentence was for Count I.

On December 5, 2005, the Court scheduled and conducted a Rule 11 plea hearing. After carefully and thoroughly going over the details of the plea agreement and advising Petitioner of his legal and constitutional rights which he was waiving, the Court determined that Petitioner had made a voluntary, knowing and understanding decision to plead guilty after having waived his rights. Petitioner admitted the stipulated facts including having acknowledged that the Webster Lane property had been obtained as a result of drug trafficking. The Court also found that there was an adequate factual basis to support the offenses pled to and Petitioner's involvement in the offenses – per the plea agreement. The Court then accepted Petitioner's guilty plea. Sentencing was deferred. Subsequently, Petitioner decided not to cooperate and did not testify at the trial and re-trial of the co-defendants. Meanwhile, Petitioner terminated the services of his third attorney who represented him at the time Petitioner entered his guilty plea,

and engaged the legal services of the fourth attorney who is subject of these claims of ineffective assistance of counsel. It was very clear at this time that Petitioner wanted out of the plea agreement and had no intent to honor the forfeiture clause with respect to the currency or proceeds from the sale of the Webster Lane property.

In its response to the Motion, the Government mentions that on or around the time of Petitioner's plea, Petitioner's wife [apparently unbeknoweth to the Government] filed a claim seeking the proceeds from the sale of the Webster Lane property. At any rate, Petitioner instructed his now fourth attorney to file a motion to withdraw his guilty plea which motion was filed on June 12, 2006. The pleadings in this case indicated that the two sides talked for a few months after the motion was filed to try to work out their differces but to no avail. Nearly seven months later (January of 2007), the Court conducted a hearing on the motion to withdraw the guilty plea. The thrust of Petitioner's motion to withdraw his guilty plea was that the executed plea differed from the original plea offer and that Petitioner did not understand the difference between the original plea offer and the executed plea—later testifying that he was shocked that there was a forfeiture clause as to the Webster Lane property and its subsequent currency derived from the sale. At the hearing on the motion to withdraw his guilty plea, Petitioner testified despite the Court's caution against Petitioner taking the stand and, possibly, making statements that in the Court's own words "could come back to haunt him"— that, is making statements inconsistent with his plea agreement, his admissions, and his representations already in the record. Notwithstanding this admonition, Petitioner took the stand and proceeded to testify that he had, in effect, lied to the Court in the Rule 11 (plea) proceeding and that he had not been truthful when he admitted the proceeding that the Webster Lane property had been obtained as a result of drug trafficking. Petitioner also testified that he was not guilty of the allegations in the indictment in that although he conceded that he conspired to sell drugs to "others", he denied that

he had sold drugs to the named persons in the indictment.  The Court determined that Petitioner had not presented a sufficient basis to support his motion, and accordingly, denied Petitioner's motion to withdraw his guilty plea.

Having taken the stand, having denied his involvement in the offense, and having given testimony which conflicted with his previous admissions, the Court had an ample basis to find that Petitioner was not entitled to the three levels downwards adjustments for acceptance of responsibility.  Instead of the adjusted offense level being 36 and, possibly, lower had Petitioner cooperated, the Court determined that his offense level ended up at 39 with a criminal history category of II.  The Court agrees with the Government that the Court very well could have increased the offense level another two points for perjured testimony given at the hearing on the motion to withdraw, yet the Court used its discretion to not  impose further difficulties for the Defendant/Petitioner. Petitioner filed an appeal of his conviction and sentence with the Fourth Circuit, arguing that the Court erred in denying his motion to withdraw his guilty plea.  In his appeal, Petitioner repeated his assertion that he did not knowingly enter a guilty plea because he believed that the plea agreement he signed was not the same as the initial plea offer made to him and, at any rate, he was unaware of the provision regarding forfeiture.  In an unpublished opinion decided on November 6, 2009, the Fourth Circuit affirmed the conviction and the sentence finding that the Court properly questioned Petitioner with reference to the plea agreement [and the forfeiture provision in particular], finding that Petitioner confirmed his understanding of the provisions in the plea agreement, and finding that the Court did not abuse its discretion in denying Petitioner's motion to withdraw his guilty plea.  Moreover, in its opinion, the Fourth Circuit observed that this Court strongly cautioned Petitioner against testifying at the hearing [noting that innocence was among the factors considered and that Petitioner was risking losing points for acceptance of responsibility].  The opinion also pointed out that this Court suggested

that Petitioner's counsel could orally represent the proffered testimony, yet as stated by the Fourth Circuit, Petitioner decided to testify.

With respect to the Webster Lane property, the Court finds it particularly relevant that subsequent to the seizure in September of 2005 of approximately $295,574.37 in bank accounts controlled by Petitioner, a decision was made by Petitioner to file or cause the filing of a claim to those funds. As part of this effort to claim those funds, the Court believes that it became necessary and convenient for Petitioner to get out of his plea agreement with the Government. This was accomplished by directing his counsel to file a motion to withdraw his plea, to assert that Petitioner did not understand the forfeiture provision and to assert that his plea was not knowingly entered. This claim of lack of understanding was the position Petitioner took during the hearing to withdraw his guilty plea and this was the same position Petitioner asserted when he filed and argued his position on appeal. It is also important to mention that following the seizure of the currency in September 2005, the Government on March 17, 2006 brought a forfeiture action against the currency in Civil Action, AW-06-0698. In that action, Mia Burton, wife of Petitioner, filed a claim to the seized currency. That action was stayed pending the conclusion of Petitioner's criminal case. Petitioner was sentenced, judgment was entered on February 28, 2007 and the civil action was reopened. Finally, on July 31, 2008, the Court granted the Government's motion to dismiss the claim in the forfeiture action holding that claimant, Mia Burton, did not present a sufficient ownership interest in the property to challenge the Government's claim to the currency.

At the end of the day, it is clear that Petitioner exercised poor judgment. Petitioner used poor judgment in not being candid with the Government with respect to the sale of the Webster Land property and with respect to his clandestine intent to file or cause his wife to file a claim to the currency both of which were in violation of the forfeiture clause in the first plea offer and the

executed plea agreement. Petitioner had nearly seven months (from June 2006 to January 2007) to reflect upon whether he really wanted to proceed with the hearing on the motion to withdraw his guilty pleas. Unfortunately, Petitioner proceeded with the hearing and unwisely took the stand during the hearing, providing conflicting testimony which resulted in the loss of guideline points for acceptance of responsibility.

The long and short of the matter is that Petitioner's claims of ineffective of counsel by his fourth counsel simply lack merit. Petitioner has not presented a cognizable basis for this Court to conclude that his counsel rendered ineffective assistance. Yes, it is true that by filing the motion to withdraw his guilty plea Petitioner was at risk of a greater sentence if the motion was denied. And, yes, taking the stand as a witness during the hearing on the motion to withdraw would result in an increase in Petitioner's sentencing guideline range. Yet, it was Petitioner's desire and request that his plea be withdrawn. Moreover, one of the factors which a court has to consider in determining whether to grant a motion to withdraw a guilty plea is whether there has been a delay between the entering of the plea and the filing of the motion. Approximately six months has elapsed since the Court accepted the guilty plea when his fourth counsel had been engaged and instructed to file the motion. Had his counsel delayed the filing or not filed a motion to withdraw as requested, Petitioner in all probability would have challenged this delay and this failure to have filed the motion as ineffective assistance.

The Court believes that Petitioner's intent was to claim the currency and that there was nothing that his counsel could say to him nor was there any admonition that this Court could give to Petitioner to dissuade Petitioner from filing the motion and from taking the stand in an effort to convince the Court that he did not understand the forfeiture clause and that he did not knowing enter a guilty plea. Finally, the Court concludes that the claim by Petitioner that counsel was ineffective in filing the  motion to withdraw before counsel had adequately reviewed the Pre-

Sentence Report or sentencing guideline range with Petitioner to be of no moment. Counsel was engaged and, indeed, hired and directed to file the motion to withdraw grounded upon Petitioner's alleged confusion and lack of understanding of the difference between the initial plea offered and the plea executed. Counsel was also required to file the motion [as the law requires] without undue delay. Counsel having filed and argued the motion to withdraw the guilty plea as directed and allegedly having done so without having reviewed the Presentence report or sentencing guideline range with Petitioner does not [under these circumstances] constitute any meaningful conduct below the standard expected of counsel.

In short, the Court finds that the three claims presented by Petitioner that his counsel rendered ineffective assistance are but bald allegations, and are essentially excuses which Petitioner wants to now use as a subterfuge for trying to repudiate his request of his counsel to file a motion to withdraw his guilty plea. Petitioner cannot now blame his attorney. Petitioner has not presented any constitutional defect in the performance of counsel nor has Petitioner presented anything to convince this Court that prejudice has resulted even if there had been an inadequate performance. In sum, the Court has reviewed the current pleadings and the entire file relative to the present motion as well as the underlying criminal case. The Court concludes that Petitioner's Motion pursuant to §2255 must be denied.

## A Certificate of Appealability

There is no absolute entitlement to appeal a district court's denial of the Motion. See 28 U.S.C. § 2253 (c) (1) "A [Certificate of Appealability, or COA]" may issue only if the applicant has made a substantial showing of the denial of a constitutional right. *Id* at § 2253 (c) (2). To meet this burden an applicant must show that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further." Slack v.

McDaniel, 529 U.S. 473, 484 (2000) (citing Barefoot v. Estelle, 463 U.S. 880, 893 (1983). Here the Court has concluded that Petitioner's Motion for Relief pursuant to § 2255 is devoid of merit and that Petitioner has not presented a basis for this Court to find that his counsel rendered ineffective assistance of counsel. It is the Court's view that Petitioner has raised no arguments which causes this Court to view the issues as debatable, or finds that the issues could have been resolved differently, or to conclude that the issues raise questions which warrant further review. Accordingly, the Court denies a Certificate of Appealability.

       A separate Order will be issued.


Date:  September 30, 2011                      _____/s/_____
                                          Alexander Williams, Jr.
                                          United States District Judge